THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: AIR CRASH AT MUAN
INTERNATIONAL AIRPORT, SOUTH KOREA
ON DECEMBER 29, 2024

MDL No. 2:26-md-03174-JLR

This Document Relates To:

ALL CASES

## JOINT REPORT

Pursuant to Your Honor's April 16, 2026 Order and Fed. R. Civ. P. 16.1(b), the parties hereby submit the following joint report:

Preliminarily, Plaintiffs respectfully raise a general objection to Defendant Boeing's positions in this Report. The purpose of this Joint Report is to simply apprise this Court of the parties' positions on the requested topics. At times, Boeing takes the liberty of substantively arguing its case to this Court. Plaintiffs contend that this Court has made clear the procedures and vehicles for such arguments—a Joint Report not being one.

Boeing respectfully submits that its positions below are intended only to address the topics the Court asked the parties to address.

JOINT STATUS REPORT - 1
(No. 2:26-md-03174)

**I.      Whether leadership counsel should be appointed, and if so, leadership counsel's selection and role**

**Plaintiffs' Position:** With multiple law firms representing plaintiffs, leadership counsel is appropriate.   Plaintiffs propose shared leadership counsel responsibilities between Charles Herrmann of Herrmann Law Group (HLG), Thomas Vertetis of Pfau Cochran Vertetis Amala PLLC (PCVA), Floyd Wisner of Wisner Law Firm (WLF), and Daniel Barks of Barks Law (BL).

Plaintiffs agree with Boeing that leadership counsel will act on behalf of all Plaintiffs in presenting written and oral arguments and submissions to the court, working with opposing counsel in developing and implementing a litigation plan, conducting discovery, and ensuring that case deadlines are met.

**Boeing's Position:** Boeing is the only defendant, so leadership counsel for defendants is unnecessary.

Boeing takes no position on Plaintiffs' proposal for the appointment of Plaintiffs' leadership counsel. If Plaintiffs' leadership counsel is appointed, Boeing proposes for the sake of efficiency that Plaintiffs' leadership be charged with acting for all Plaintiffs in presenting written and oral arguments and submissions to the court, working with opposing counsel in developing and implementing a litigation plan, conducting discovery, and ensuring that case deadlines are met. Boeing also proposes that, where notice is provided to Plaintiffs' leadership, notice shall be deemed complete upon all Plaintiffs' counsel in these proceedings.

**II.     Previously entered orders that should be vacated or modified**

There are no previously entered orders, scheduling or otherwise, that need to be vacated or modified.

**III.    Proposed schedule for additional management conferences**

The Parties propose filing status reports every three months to apprise the Court of developments in the case, including whether they believe a management conference is necessary. After reviewing the status reports, the Court can then set additional management conferences as

JOINT STATUS REPORT - 2
(No. 2:26-md-03174)

needed.

Additionally, the Parties respectfully request that the June 11, 2026 conference be set in the morning.

**IV.    How to manage the direct filing of new actions in the MDL**

**Plaintiffs' Position:** Plaintiffs propose the filing of a Master Complaint with Notice of Adoption of the Master Complaint short form complaints relating to individual plaintiffs or plaintiff groups. A draft Master Complaint is attached as **Exhibit 1**. Plaintiffs seek leave to file a Master Complaint within two weeks of this Court's order on this joint report.

Plaintiffs and their representing law firms have additional clients to be added as plaintiffs in this action. Plaintiffs have attached as **Exhibit 2** a proposed standardized short form Notice of Adoption of Master Complaint. All Plaintiffs seek leave to add additional clients in short form complaints within two weeks of this Court's order on this joint report. A draft of the HLG/PCVA plaintiffs' short form complaint, which includes the additional clients with claims, is attached as **Exhibit 3**. A draft of the Wisner/Barks plaintiffs' short form complaint is attached as **Exhibit 4**.

Both groups of law firms expect there will be future clients to be added through additional short form complaints. We expect these additions to drop off by the end of the 2026 calendar year. Plaintiffs are open to the Court's preference on how these future claims are added to this action. If it is this Court's preference, Plaintiffs can file motions for leave to file additional short form complaints. If, however, this Court welcomes the addition of short form complaints without seeking leave, at least through the end of 2026, this may be a more efficient approach.

**Boeing's Position:** Boeing does not believe that any new filings will be so numerous as to justify the entry of an order allowing for direct filings. If, however, the Court prefers to allow direct filings, Boeing proposes that the Parties be allowed to negotiate and submit an agreed upon order setting the conditions for direct filings. Boeing does not oppose Plaintiffs' proposal to use consolidated pleadings, though it reserves all defenses and objections to the master and short-form complaints. If the Court does allow Plaintiffs to file a master complaint, Boeing asks that its

JOINT STATUS REPORT - 3
(No. 2:26-md-03174)

response to such a master complaint be deemed responsive to all short form complaints and that no further response to the short form complaints be required unless those short form complaints include additional allegations or claims that are not in the master complaint.

**V.    Whether related actions have been or are expected to be filed in other courts, and whether to adopt methods for coordinating with them**

There are no known actions currently filed in Korea or the United States other than those involved here. Plaintiffs are aware that families in Korea are in the process of interviewing various law firms in both the United States and Korea to represent their interests. Plaintiffs anticipate additional families will file lawsuits in both Korea and the United States before the end of 2026. To date, the only plaintiffs that have filed cases in the United States are those involved in this MDL.

Boeing expects that it will remove to federal court any cases that are filed in the future in state courts. Those cases and any actions filed in any other federal court would then be transferred to this MDL as a tagalong action. Given the likelihood that all of the cases filed in the future will be transferred to the MDL, the Parties do not see a present need to adopt any method for coordination with later-filed cases.

**VI.    Whether consolidated pleadings should be prepared**

**Plaintiffs' Position:** As set out above, Plaintiffs propose that a Master Complaint and short forms are appropriate for this case.  Plaintiffs also propose consolidated discovery requests to streamline the process and expect to coordinate any anticipated motion practice as well.

**Boeing's Position:** Boeing does not oppose Plaintiffs' proposal to use consolidated pleadings, though it reserves all defenses and objections to the master and short-form complaints.

**VII.    How and when the parties will exchange information and discovery**

**Plaintiffs' Position:**  In lieu of briefing and arguing a motion in the Joint Report, Plaintiffs request a briefing schedule regarding the scope and sequencing or phasing, if any, and timeframe for discovery.

JOINT STATUS REPORT - 4
(No. 2:26-md-03174)

Boeing's position that forum non conveniens should be decided without any discovery or with discovery categorically limited to purported "FNC issues" is unsupported. Courts in this District recognize that "'[a] pending motion to dismiss is generally not grounds for staying discovery,'" and that, in deciding whether discovery should proceed, courts consider whether the motion can "'be decided without additional discovery.'" *HDT Bio Corp. v. Emcure Pharms., Ltd.*, No. C22-0334JLR, 2022 WL 2106160, at *2 (W.D. Wash. June 10, 2022) (quoting *Edmonds v. Amazon.com, Inc.*, No. C19-1613JLR, 2020 WL 8996835, at *1 (W.D. Wash. Mar. 6, 2020), and *Roberts v. Khounphixay*, No. C18-0746MJP-BAT, 2018 WL 5013780, at *1 (W.D. Wash. Oct. 16, 2018)). The Supreme Court likewise has recognized that forum non conveniens determinations frequently overlap with merits-related factual issues, including "sources of proof," witness availability, and the "locus of the alleged culpable conduct." *Van Cauwenberghe v. Bard*, 486 U.S. 517, 518-19, 108 S. Ct. 1945, 1947, 100 L. Ed. 2d 517 (1988). Indeed, the Court explained that forum non conveniens inquiries generally become "entangled in the merits of the underlying dispute." *Van Cauwenberghe*, 486 U.S. at 518. Plaintiffs therefore object to Boeing's request to foreclose or categorically restrict discovery prior to resolution of its anticipated forum non conveniens motion.

**Boeing's Position:** The key threshold dispositive issue in these cases is whether they should be litigated here or in South Korea pursuant to the doctrine of *forum non conveniens*; that issue should be decided before any discovery occurs. Other courts have prioritized the *forum non conveniens* issue in cases involving foreign aviation accidents. *See Cheng v. Boeing Co.*, 708 F.2d 1406, 1408, 1411-1412 (9th Cir. 1983) (affirming FNC dismissal of claims arising from airplane crash in Taiwan where the trial court had stayed all discovery pending resolution of the FNC issue); *In re Air Crash over the S. Indian Ocean on March 8, 2014*, 352 F. Supp. 3d 19, 54 (D.D.C. 2018) (dismissing claims arising from the disappearance of Malaysia Airlines flight MH370 over the Southern Indian Ocean on FNC grounds prior to resolving other threshold issues, including sovereign immunity and jurisdictional challenges), *aff'd*, 946 F.3d 607, 612, 615 (D.C. Cir. 2020);

JOINT STATUS REPORT - 5
(No. 2:26-md-03174)

Minute Order Setting Trial and Related Dates, *Ballesteros v. Boeing Co.*, No. 22-393 (W.D. Wash. entered Aug. 10, 2022), Dkt. No. 30 (setting deadline for filing FNC motion at early stage prior to the parties engaging in extensive discovery); Minutes of Status Conference, *In re Air Crash Disaster near Palembang, Indonesia*, MDL No. 1276 (W.D. Wash. entered July 13, 1999), Dkt. No. 12 (setting briefing schedule for FNC motion at outset of litigation); Minute Entry, *In re Air Crash into the Java Sea on January 9, 2021*, No. 23-3072 (E.D. Va. entered June 14, 2023), Dkt. No. 7 (directing defendant to file its FNC motion at the outset of litigation, noticing it for the return date of plaintiffs' motion to remand); Order Dismissing Case, *Clerides v. Boeing Co.*, No. 07-4378 (N.D. Ill. entered Nov. 14, 2007), Dkt. No. 16 (dismissing matter on FNC grounds within three and a half months of the filing of the complaint asserting claims arising from an airplane crash near Athens). Courts have also recognized the importance of prioritizing resolution of the *forum non conveniens* issue in other contexts. *See*, *e.g.*, *Vivendi, S.A. v. T-Mobile USA, Inc.*, No. 06-1524, 2007 WL 1168819, at *2 (W.D. Wash. Apr. 18, 2007) ("Resolution of the forum non conveniens issue should take place at an early stage of litigation before the parties engage in extensive discovery.").

This issue should be resolved before any merits discovery begins. "[T]he central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient." *Piper Aircraft v. Reyno*, 454 U.S. 235, 258-59 (1981). Requiring the parties to conduct merits discovery before deciding the *forum non conveniens* issue would defeat that purpose. *See id.* at 258 ("Requiring extensive investigation would defeat the purpose of [a *forum non conveniens*] motion."); *Mujica v. Occidental Petroleum Corp.*, 381 F. Supp. 2d 1134, 1143 n.4 (C.D. Cal. 2005) ("As *forum non conveniens* doctrine seeks to protect defendants from litigation in an inconvenient forum, courts generally resist plaintiffs' motion for extensive discovery on the *forum non conveniens* question."); *Vivendi, S.A.*, 2007 WL 1168819, at *2 ("A motion to dismiss for forum non conveniens does not generally warrant detailed development of the case through discovery.").

The Supreme Court's decision in *Van Cauwenberghe* does not say otherwise. That case

was focused, in its relevant part, on whether a denial of a motion to dismiss on the grounds of *forum non conveniens* was immediately appealable as a collateral order. *Van Cauwenberghe*, 486 U.S. at 527. The Court did not, however, state or even suggest that merits discovery should be allowed while a *forum non conveniens* motion is pending. *Id*. at 529. To the contrary, where the court did discuss discovery, it noted that the *forum non conveniens* "inquiry does not necessarily require extensive investigation, and may be resolved on affidavits presented by the parties," and that "in certain cases, the *forum non conveniens* determination will not require significant inquiry into the facts and legal issues presented by a case . . . ." *Id*.

Further, although "[a] pending motion to dismiss is generally not grounds for staying discovery," *HDT Bio Corp.*, 2022 WL 2106160, at *2, "a challenge to venue is a 'common example' of a situation warranting a stay of discovery." *Ahern Rentals Inc. v. Mendenhall*, No. 20-542, 2020 WL 8678084, at *1 (W.D. Wash. July 9, 2020). Boeing's forthcoming *forum non conveniens* motion is a challenge to venue. *See Am. Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994) ("At bottom, the doctrine of *forum non coveniens* is nothing more or less than a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined.").

Given that most, if not all, of the discoverable evidence relevant to the *forum non conveniens* issue is publicly available, no additional discovery is needed to decide the issue. If, however, the Court is inclined to allow any discovery on *forum non conveniens*, it should be narrowly tailored to the relevant issues.

If information or discovery on the merits is exchanged, a protective order is needed to protect confidential information and information that is subject to export control laws. *E.g.*, 15 C.F.R. §§ 730.1, et seq.; 22 C.F.R. §§ 120.1, et seq. If needed, the Parties will negotiate and submit a joint proposed order to the Court.

Additionally, Boeing notes that this accident is currently subject to an ongoing investigation by the South Korean Aviation and Railway Accident Investigation Board

JOINT STATUS REPORT - 7
(No. 2:26-md-03174)

("ARAIB"). The United States National Transportation Safety Board ("NTSB") is a party to the ARAIB investigation, and Boeing is providing technical assistance. Under international law (Section 5.26 of Annex 13 to the Convention on International Civil Aviation) and federal law (49 C.F.R. § 831.13 and 49 U.S.C. § 1114(f)), Boeing is prohibited at this time from releasing information concerning this accident to any person not a party to the investigation without prior consultation and approval of the NTSB. Any exchange of information or discovery that occurs before the investigation is completed is subject to these limitations.

## VIII.    Likely pretrial motions

**Plaintiffs' Position:** Based on the above lack of agreement regarding the scope and sequencing or phasing, if any, and timeframe for discovery, Plaintiffs do not believe that Boeing's proposed timeline for a *forum non conveniens* motion is workable.  Only after this Court resolves the discovery dispute can the parties then create a briefing schedule for Boeing's motion to dismiss based on *forum non conveniens*.

**Boeing's Position:** As discussed above, *forum non conveniens* presents a threshold issue that is potentially dispositive.

Boeing intends to file a motion to dismiss all actions in this MDL on the grounds of *forum non conveniens*. Boeing proposes the following briefing schedule for that motion:

| Event | Due Date |
|---|---|
| Motion to Dismiss | Four weeks after Plaintiffs file their Short-Form Complaints |
| Response in Opposition | Four weeks after Boeing files its Motion |

JOINT STATUS REPORT - 8
(No. 2:26-md-03174)

| Event | Due Date |
|---|---|
| Reply | Two weeks after Plaintiffs file their response |

If its motion to dismiss on the grounds of *forum non conveniens* is denied, Boeing anticipates other motions may be necessary, including a choice of law motion, a motion for summary judgment, motions *in limine*, and *Daubert* motions. Boeing respectfully requests that a schedule for these motions be entered, if necessary, after the *forum non conveniens* issue is decided.

**IX.** **Whether the court should consider any measures to facilitate resolving some or all actions before the court**

**Plaintiffs' Position:**  It is Plaintiffs' position that any such measures to facilitate resolution are premature. To date, the South Korean ARAIB investigation into the December 29, 2024 crash is ongoing and a final report has not been issued.  After substantial discovery, there may likely be measures this Court can take.  Should those opportunities arise, Plaintiffs contend that these can be addressed in future Status Reports.

**Boeing's Position:** *Forum non conveniens* is a dispositive threshold issue that should be resolved before any other issues are considered. *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007) ("We hold that a district court has discretion to respond at once to a defendant's *forum non conveniens* plea, and need not take up first any other threshold objection."). Boeing does not believe any other measures to facilitate resolving these actions are necessary at this time.

**X.** **Whether any matters should be referred to a magistrate judge or a master**

The Parties consent to the referral of discovery disputes to a magistrate judge but prefer that all other matters be decided by this Court, including deciding the scope and sequencing or

JOINT STATUS REPORT - 9
(No. 2:26-md-03174)

phasing, if any, and timeframe for permissible discovery while Boeing's motion to dismiss on the grounds of *forum non conveniens* is pending.

**XI.    The principal factual and legal issues likely to be presented**

**Plaintiffs' Position:** Plaintiffs generally refer this Court to their Complaints in the underlying matters as well as the draft Master Complaint included here.  More specifically,

Legal Issues:

- Boeing's contentions for a forum non conveniens dismissal.
- Choice of law regarding Plaintiffs claims, for liability and damages.
- The applicability of any statute of repose to the Plaintiffs' claims.

Factual Issues:

- The design defects of Boeing's 737-800 model.
- Boeing's knowledge of the design defects of Boeing's 737-800 model.
- Boeing's failure to correct design defects in the 737-800 or warn of the same.
- The failure of any aircraft components critical in aiding the pilots to land the aircraft safely in the event of a birdstrike.
- The nature and extent of Plaintiffs' damages as a result of the air disaster.

**Boeing's Position:** The principal legal issue that should be decided first is whether these actions should be dismissed on the grounds of *forum non conveniens*. The principal factual questions related to that issue are the relative levels of interest of the potential forums and the location of the relevant witnesses and evidence.

Beyond that, Boeing anticipates the following principal legal and factual issues are likely to be presented:

Legal issues:

- Whether Korean law or some other law applies to Plaintiffs' claims and damages.
- Whether the actions of one or more third-parties, including potentially the Muan International Airport, Korean Airports Corporation, Korean Ministry of Land,

JOINT STATUS REPORT - 10
(No. 2:26-md-03174)

Infrastructure, and Transport, the Korean contractors who designed, built, and maintained the concrete embankment that the aircraft collided with, any contractor of the Muan International Airport that was providing wildlife management services, or Jeju Air, constitute a superseding cause of the accident.

- Whether Plaintiffs' claims are preempted by federal law.

- Whether some or all of Plaintiffs' claims are barred by any applicable statute of repose.

Factual issues[1]:

- Whether the concrete berm that the accident aircraft collided with was designed, built, and maintained in compliance with Korean regulations or was otherwise negligently designed, built, or maintained, and whether any violations of those regulations or negligence caused or contributed to the accident.

- Whether the Muan International Airport's wildlife mitigation efforts complied with Korean regulations or were otherwise negligently planned or carried out, and whether any violations of those regulations or negligence caused or contributed to the accident.

- Whether the aircraft was maintained and operated in compliance with Korean regulations or in a manner that was negligent, and whether any violation of those regulations or negligence caused or contributed to the accident.

- Whether the aircraft complied with Federal Aviation Administration and Korean regulations.

---

[1] As discussed above, the accident is currently subject to an ongoing investigation by the ARAIB. The NTSB is a party to the ARAIB investigation, and Boeing is providing technical assistance. Under international law (Section 5.26 of Annex 13 to the Convention on International Civil Aviation) and federal law (49 C.F.R. § 831.13 and 49 U.S.C. § 1114(f)), Boeing is prohibited at this time from releasing information concerning this accident to any person not a party to the investigation without prior consultation and approval of the NTSB. In framing these factual issues, Boeing is not relying on information made known to certain Boeing personnel by the NTSB related to the ongoing investigation.

JOINT STATUS REPORT - 11
(No. 2:26-md-03174)

- Whether the aircraft had any defects and, if so, whether those defects caused or contributed to the accident.
- What economic and non-economic losses, if any, did the Plaintiffs, who reside in Korea, or their decedents, who are Korean residents and citizens, suffer as a result of the accident.

## XII.   Other Matters the Parties wish to bring to the Court's attention

The Parties do not have any other matters they wish to bring to the Court's attention at this time.

***

The Parties look forward to discussing these issues with the Court at the upcoming status conference.

JOINT STATUS REPORT - 12
(No. 2:26-md-03174)

**PLAINTIFFS**

By: /s/ Charles J. Hermann

 Charles J. Herrmann
 Lara A. Herrmann
 Anthony Marsh
 Sara Luer
 **Herrmann Law Group**
 505 5th Ave. So., Ste. 330
 Seattle, WA 98104
 V: 206.625.9104
 F: 206.682.6710
 Email: Charles@HLG.lawyer
 Email: Lara@HLG.lawyer
 Email: Anthony@HLG.lawyer
 Email: Sara@HLG.lawyer


By: /s/ Thomas B. Vertetis

 Thomas B. Vertetis
 Christopher E. Love
 William T. McClure
 **Pfau Cochran Vertetis Amala PLLC**
 909 A St. Suite 700
 Tacoma, WA 98402
 Email: tom@pcvalaw.com
 Email: chris@pcvalaw.com
 Email: wmcclure@pcvalaw.com


By: /s/ Floyd A. Wisner

 Floyd A. Wisner
 **Wisner Law Firm PC**
 181 W Madison St., Ste. 4700
 Chicago, IL 60602
 Email: faw@wisner-law.com


By: /s/ Daniel D. Barks

 Daniel D. Barks
 **Barks Law**
 1015 Tyrone Road, Ste. 610
 Tyrone, GA 30290
 Email: ddb@barks-law.com


 *Attorneys for Plaintiffs*

**THE BOEING COMPANY**

By: /s/ Daniel P. Ridlon

 Mack H. Shultz
 Daniel P. Ridlon
 **McGuireWoods LLP**
 1001 Fourth Avenue, Suite 4368
 Seattle, Washington 98514-1123
 Telephone: (206) 336-5000
 Facsimile: (206) 336-5010
 MShultz@mcguirewoods.com
 DRidlon@mcguirewoods.com


 *Attorneys for Defendant The Boeing Company*

JOINT STATUS REPORT - 13
(No. 2:26-md-03174)

Respectfully submitted, this 21st day of May, 2026.

JOINT STATUS REPORT - 14
(No. 2:26-md-03174)

# EXHIBIT 1

The Honorable James L. Robart

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| IN RE: AIR CRASH AT MUAN INTERNATIONAL AIRPORT, REPUBLIC OF KOREA ON DECEMBER 29, 2024 | MDL No. 2:26-md-03174-JLR<br><br>MASTER COMPLAINT<br>[Proposed]<br><br>(*Relates to All Actions*) |

### TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | NATURE OF ACTION ……………………………………..…… | 2 |
| II. | PARTIES……………………………………………………..…… | 2 |
| III. | JURISDICTION & VENUE ……………………………………… | 3 |
| IV. | SYNOPSIS ……………………………………………………... | 4 |
| V. | BACKGROUND ………………………………………………… | 5 |
| | A. DEGRADATION OF BOEING'S CULTURE OF SAFETY …………………… | 5 |
| VI. | THE AIR CRASH ……………………………………………… | 8 |
| | A.  AIR CRASH TIMELINE……………………………………… | 8 |
| | B.  BIRD STRIKE …………………………………………….. | 10 |
| | C.  ENGINE FAILURES ……………………………………….. | 10 |

Master Complaint
Case No. MDL 3174 – Pg. 1

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

D. Cascading Safety Systems Failures …………………..…….. 10

VII. Causes of action ……………………………………………….. 13

A. Generally ……………………………………………….. 13

B. First Cause of Action: Negligence ………………………… 13

C. Second Cause of Action: Breach of Warranty ……………… 17

D. Third Cause of Action: Strict Liability …………………… 18

VIII. Respondeat Superior ……………………………………….. 19

IX. Choice of Laws ……………………………………………….. 19

X. Reservation of Rights ……………………………………….. 20

XI. Jury Demand ……………………………………………….. 20

XII. Prayer for Relief ……………………………………………….. 20

A. Survival Actions ……………………………………….. 20

B. Wrongful Death Actions ………………………………… 20

. . .

## I. Nature of Action

1. This is an action to recover damages for the wrongful death of multiple victims who perished in the air crash of Jeju Airlines flight 2216 that occurred at the Muan International Airport in the Republic of Korea (Korea) on December 29, 2024. Plaintiffs are duly appointed Personal Representatives or Administrators of the estates (PRs) of decedents who perished in this air crash. On behalf of their respective Claimants, Plaintiffs allege wrongful death actions against Defendant The Boeing Company (Boeing) for their family members who perished in this air crash.

## II. Parties

2. Plaintiffs are duly appointed Personal Representatives or Administrators of the estates of decedents who perished in this air crash. Plaintiffs are acting on behalf

Master Complaint
Case No. MDL 3174 – Pg. 2

HERRMANN LAW GROUP
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

of their respective claimants who have wrongful death claims and are heirs of the decedents' estates. Plaintiffs and their Claimants are all citizens and residents of the Republic of Korea.

3. Defendant The Boeing Company ("Boeing") was, at all relevant times, a corporation organized under Delaware law, with its headquarters in either Virginia or, before 2023, Illinois. Boeing is registered with the Washington Secretary of State and has done significant business in the State of Washington, principally King County, for over a century. Boeing does business in the State of Washington and places manufactured goods into the stream of commerce.

4. Boeing, and/or Defendants Jane Roes 1-10 designed, manufactured, distributed, and sold the defective aircraft involved in this air crash. These defendants knew those products would be sold and distributed nationwide and internationally, specifically including the Republic of Korea.

5. These Jane Roe defendants will be identified more fully as their names are learned during discovery, but they will include the manufacturer(s), distributor(s), and seller(s) of the relevant parts of the aircraft that harmed Plaintiffs. Any such individuals and entities are put on notice they will be named as defendants when their identity is established. On information and belief, some of these individuals also do not have an agent for service of process within the United States.

### III. JURISDICTION & VENUE

6. The amount in controversy exceeds $75,000 USD in each of the individual cases. Plaintiffs are citizens and residents of the Republic of Korea. Defendant Boeing is a U.S. Corporation organized under Delaware law with current headquarters in the State of Virginia. Boeing has been present and doing business in King County in the State of Washington for 110 years. Boeing designed, manufactured, sold, and delivered the subject defective aircraft all in King County in the State of Washington.

Master Complaint
Case No. MDL 3174 – Pg. 3

7. This Court has jurisdiction under 28 U.S.C. § 1332 (Diversity) and under 28 U.S.C. § 1407 through a transfer order issued by the  United States Judicial Panel on Multidistrict Litigation on February 5, 2026.

8. Venue is likewise proper under 28 U.S.C.  § 1391 (b)(1) & (2) in that Boeing is present and conducting business here and the majority of the acts and omissions complained of occurred in this Western District of Washington.

## IV. SYNOPSIS

9. The aircraft involved in this air crash was a Boeing Next-Generation 737-800 manufactured and assembled at Boeing's Renton plant in King County, Washington where it was given serial #37541. It first entered service in 2009 when it was delivered to Ryanair. It was subsequently sold in 2017 and then leased to Jeju Air operating in and out of the Republic of Korea where it was issued registration #HL8088.

10. On December 29, 2024, Jeju Air flight 2216 was returning from Thailand to the Muan airport in Korea where it crashed after landing, killing 179 of the 181 people onboard. In its initial approach, the airplane suffered a bird strike which triggered a massive failure of nearly all of its antiquated—designed in the 1960s— electrical and hydraulic systems required to safely land the aircraft.

11. These system failures included: 1) the engines; 2) integrated drive generators (IDGs); 3) thrust reversers; 4) flaps; 5) slats; 6) spoilers; 7) ailerons; 8) landing gear; 9) wheel brakes; 10) Auxiliary Power Unit (APU); 11) A/B electrical bus backup cross-ties; 12) battery backup; 13) flight data recorder (FDR); 14) cockpit voice recorder (CVR); and 15) Automatic Dependent Surveillance–Broadcast transponder (ADS-B).

12. As a direct result of these multiple failures, the pilots found themselves robbed of critical systems required to land the aircraft safely. The pilots struggled desperately to complete a go-around to make a belly-landing too fast and too far

Master Complaint
Case No. MDL 3174 – Pg. 4

HERRMANN LAW GROUP
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

down the runway. After touchdown, the aircraft slid past the runway where it crashed into a concrete reinforced berm constructed to provide a platform for the Instrument Landing System ("ILS") antennas. Upon impact the aircraft exploded in a fiery ball killing 179 of the 181 people onboard.

## V. BACKGROUND

### A. DEGRADATION OF BOEING'S CULTURE OF SAFETY

13. Boeing is one of the largest manufacturers of commercial aircraft in the world. Boeing designs, manufactures, inspects, assembles, markets, and sells large commercial jet planes, including the Boeing 737, and provides product-related instructions, manuals, maintenance, and training to customers worldwide.

14. Since 1916, when William Boeing founded the company, Boeing has touted that "*ensuring safe travels for all passengers and crew is its primary focus.*" To this day, this message is promoted and advertised to the consumers.

15. Due to the many passengers who rely on Boeing aircraft for aviation transportation, constant vigilance and relentless focus on maintaining up-to-date safety systems is required to ensure passenger safety.

16. Unfortunately, it is well documented that in 1997, when Boeing acquired McDonnell Douglas (MD), Boeing also acquired a large part of MD's management. MD's CEO Harry Stonecipher became Boeing's President and Chief Operating Officer (COO). Almost immediately Boeing's proud ethos of *"safety first"*—long the bedrock of its engineering culture—eroded into a philosophy of *"profits first."* As the new COO Stonecipher bluntly summed up:

> "When people say I changed the culture of Boeing, that was the intent, so that it's run like a business rather than a great engineering firm. It is a great engineering firm, but people invest in a company because they want to make money."

17. Through outsourcing parts and cost-cutting, Boeing's new management prioritized profitability, cost control, and stock value. As outlined in Jerry Useem's

Master Complaint
Case No. MDL 3174 – Pg. 5

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

April 20, 2024, article, BOEING AND THE DARK AGE OF AMERICAN MANUFACTURING published in *The Atlantic*, much of Boeing's safety program has been lost with outsourcing. For example:

> ".... [there] were the problems that a Boeing engineer, L. J. Hart-Smith, had foreseen in a prescient white paper that he presented at a 2001 Boeing technical symposium. With outsourcing came the possibility that parts wouldn't fit together correctly on arrival. 'In order to minimize these potential problems,' Hart-Smith warned, 'it is necessary for the prime contractor to provide on-site quality, supplier-management, and sometimes technical support. If this is not done, the performance of the prime manufacturer can never exceed the capabilities of the *least* proficient of the suppliers.' Boeing didn't listen."

18. This erosion of Boeing's safety culture is a matter of public record and bears directly on the systemic failures involved in the Jeju air crash. A September 2024 staff memorandum from the U.S. Senate Permanent Subcommittee on Investigations revealed internal Boeing surveys showing that only 47% of employees believed that schedule pressures did not cause their teams to lower safety or quality standards (pp. 2 & 4-5). This reflects a pervasive shift in corporate priorities away from engineering integrity and toward production expediency (pp. 2 & 4-5). The same memorandum cited multiple instances in which Boeing managers failed to respond to safety concerns raised by employees. These concerns included systemic failures to document and control nonconforming parts such as knowing installation of nonconforming parts on aircraft (at pg.9).

19. Further corroboration of Boeing's broken safety culture is found in the Federal Aviation Administration ("FAA") Administrator's prepared remarks for his testimony before the UNITED STATES SENATE PERMANENT SUBCOMMITTEE ON INVESTIGATIONS on September 24, 2024, just three (3) months before this air crash. The title reads: FAA OVERSIGHT OF BOEING'S BROKEN SAFETY CULTURE.

20. Whistleblower testimony submitted to the FAA Office of Audit and Evaluation as later disclosed in ABC News's investigative report further substantiates these

HERRMANN LAW GROUP
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

claims. Former quality inspectors and engineers described a workplace environment in which safety concerns were routinely suppressed, documentation was falsified, and pressure from upper management discouraged full compliance with regulatory standards. One whistleblower testified that he was instructed not to report structural defects in fuselage assembly and that his attempts to escalate the issue were met with retaliation.

21. Then in 2001, Boeing COO Stonecipher spearheaded the move of Boeing's headquarters some 2,000 miles away to Chicago, where Boeing would manage its Washington State plants remotely. COO Stonecipher and Chief Executive Officer ("CEO") Phil Condit had already replaced much of Boeing's senior management, the first such housecleaning in Boeing's 85-year history.

22. As CEO Condit was quoted in the Seattle Times: *"We've got to change, and we can't hope that it will just sort of happen… We've got to do something. We have to take action. That's the message."*

23. The first generation of Boeing 737s were put into service in April of 1968. The later *"Classic"* series began service in 1984. Then came the "*Next Generation (NG)*," in 1997. The latest, the infamous *"MAX"* series, started in 2017.

24. All NG models retained the core electrical and hydraulic architecture of the original 737-100/200 design from 1968. The production run of the NG models ended in January of 2020. The NG models preserved the 115V AC, 28V DC, and 400Hz electrical system architecture from the original 737. This includes the use of engine-driven generators, transformer rectifier units (TRUs), and essential/non-essential bus separation.

25. This 737-800 also retained the dual hydraulic system (System A and B) with engine-driven and electric pumps, reservoirs, and accumulators set up nearly identical to the original 737-100/200. These systems powered flight controls, landing gear, brakes, and thrust reversers. The 737-800 continued to rely on mechanical linkages and hydraulic actuation, preserving the original control philosophy.

Master Complaint
Case No. MDL 3174 – Pg. 7

HERRMANN LAW GROUP
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

26. Boeing retained this technology to keep costs down and sales up. In short, for profit. Significant architectural changes would have necessitated expensive new manufacturing and assembly infrastructure. Retention of the older technology significantly shortened certification; significant changes would have triggered a full recertification process. Finally, training was cheaper.

27. According to latest statistics available, all 737 models have experienced 529 aviation accidents and incidents; 234 hull losses; and 5,779 deaths.

28. The subject aircraft was an NG 737-800 model delivered in September of 2009. Thus, this antiquated technology was nearly 42 years old when delivered, making it 57 years old at the time of this accident.

29. Defendant Boeing or a reasonably prudent manufacturer knew or should have known that the 737-800 was unreasonably dangerous in foreseeable bird-strike and engine-failure scenarios.  As designed, the aircraft lacked sufficient redundancy between Engine 1, emergency power systems, and landing gear operation.  In certain loss-of-power emergencies involving Engine 1 failure, the aircraft may not have appropriate alternative power or hydraulic sources to timely deploy the landing gear. Reliance on the APU and manual emergency procedures may become necessary because normal landing gear deployment can be degraded or unavailable. Activation of the APU and emergency landing gear deployment are not automatic and, instead, require pilot recognition and manual input to initiate. As such, they are time consuming and promote an unreasonable risk to passenger safety, especially at low altitude bird strikes that occur upon takeoff or descent.

30. Prior incidents before the Jeju Air Flight 2216 disaster demonstrated the foreseeable dangers associated with catastrophic bird strikes and cascading systems failures, including Ryanair Flight 4102 in 2008 and US Airways Flight 1549 in 2009.  Unlike the Boeing 737-800, the Airbus A320 involved in Flight 1549 was equipped with a ram air turbine ("RAT"), an emergency backup power system

Master Complaint
Case No. MDL 3174 – Pg. 8

automatically deployed as needed and capable of supplying power to critical aircraft systems during severe power-loss events.  Boeing later incorporated similar RAT technology into newer-generation aircraft, including the Boeing 787. These incidents and available technologies provided notice of foreseeable, unreasonable operational risks and safer alternative designs.

## VI. THE AIR CRASH

### A. AIR CRASH TIMELINE

31. The following timeline provides a sequential explanation as to how this air crash occurred.

32. **08:54:43[1]** - Jeju Air 2216 contacts Muan airport air traffic requesting permission to land. Permission granted.

33. **08:57:32 -** As the aircraft descended through 1500 feet at approximately 1:45 minutes before the planned touchdown, established protocols required the landing gear to have been deployed. A photo of the aircraft in its initial approach, before the bird strike, reflects that the landing gear was down. But the film of the final approach reflects that the landing gear had been retracted but had not been redeployed.

34. **08:57:50 -** Air traffic control gives a *"caution - bird activity"* advisory.

35. **08:58:11 -** Jeju Air pilots talk about spotting a flock of birds below the aircraft.

36. **08:58:26 -** The pilots abort the initial landing attempt to execute a "go-around." Within a few seconds, both engines suffer bird strikes but continue to operate with vibrations.

37. **08:58:45 -** While performing emergency procedures in response to the bird strikes the pilots shut down the left engine and apply its fire extinguisher.

38. **08:58:49 -** The last data out of the Flight Data Recorder (FDR) reflects: the aircraft was flying at 498' above ground level (AGL); at a speed of 161 knots (185

---

[1] All times are Korean Standard Time (KST).

Master Complaint
Case No. MDL 3174 – Pg. 9

HERRMANN LAW GROUP
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

mph); just 1.3 miles; and 30-35 seconds from the planned touchdown on the runway threshold.

39. **08:58:50 -** The aircraft's FDR and Cockpit Voice Recorder (CVR) stop recording.

40. **08:58:56 –** The pilot radios ground ATC *"Mayday, mayday, mayday, bird strike, bird strike, going around."*

41. **08:59:17 –** The flight reaches the estimated time of normal planned touchdown in the initial approach.

42. **09:00-01 -** During the go-around, the pilot requests clearance to land on runway 19, which is an approach in the opposite direction on the airport's single physical runway. Tower approval given.

43. **09:02:34 -** Given estimates of the aircraft's speed and the distance between the point of touchdown and the ILS antenna embankment, the aircraft's touchdown time is estimated. Touchdown occurs about 1200 meters down the 2600 meters runway (43% lost), traveling about 152 kts (175 mph).

44. **09:02:57 -** Flight 2216 crashes into berm after over-shooting the runway. **Note:** Decedents experienced pre-death fright and terror for approximately four minutes and twenty-one seconds (4:21) during the time interval between bird strikes and impact with the berm.

### B. BIRD STRIKE

45. Bird strikes are a foreseen risk to air travel. Multiple government agencies provide warnings, and FAA regulations require commercial engines such as the CFM56-7B26 turbofans on the aircraft to tolerate certain levels of bird ingestions.

46. DNA testing has revealed that the birds that struck both of the aircraft's engines were Baikal Teals—a sub-species of ducks prevalent on freshwater lakes near the Muan airport, especially during their seasonal, southern migration during the winter months. Baikal Teals are relatively small, weighing on average slightly

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

less than one pound. Whether more than one bird was ingested in either engine is unknown to Plaintiffs.

### C. ENGINE FAILURES

47. Both engines were damaged. The pilots shut down the left engine and immediately applied its fire extinguisher. The right engine experienced a surge, emitting flames and thick black smoke. It continued to operate providing barely enough thrust (estimated at about 55%) to keep the aircraft in the air while the pilots executed the go-around.

48. Given the CFM56-7B26 engines installed on  this aircraft, 14 C.F.R. § 33.76(c)(2) & Table 2 (2024) required each engine to withstand ingestion of no less than four (4) birds weighing even slightly *more* than the maximum estimated weight of the Baikal Teal ducks involved in this bird strike—without more than a sustained 25% loss of thrust as required under 14 C.F.R. § 33.76(c)(6).

49. Plaintiffs expect that discovery, coupled with expert opinion, may reveal the number of birds ingested and the severity of the damage done to each engine. These engines were likely defective.

### D. CASCADING SAFETY SYSTEM FAILURES

50. The primary sources of AC electricity on this Boeing 737-800 model aircraft are Integrated Drive Generators (IDGs) attached to and mechanically powered by each respective engine. It also had an Auxiliary Power Unit (APU) generator that ran on the aircraft's fuel. The APU does not start automatically; rather it requires pilot activation. Its starter also requires adequate AC electricity. Finally, the onboard battery could supply electricity for systems running on DC current and to an inverter that could supply AC current for a brief period.

51. Shortly after the bird strikes when the pilots apparently shut down the left (No. 1) engine, all three of the FDR, CVR, and Transponder ADS-B quit working. By the time the aircraft had completed the go-around and was approaching the runway for

Master Complaint
Case No. MDL 3174 – Pg. 11

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

a second time, nearly all of the systems designed to assist the pilots in safely landing the aircraft failed.

52. First, the group of equipment designed to slow the plane as much as safely possible before landing failed, including:  (1) a group of stall speed reducers—the trailing-edge double-slotted flaps, leading-edge Krueger flaps inboard & slats outboard, and auto-slats designed to extend the leading-edge slat system to their safe maximum; (2) devices designed to physically slow the aircraft to just above its reduced stall speed including four (4) *flight* spoilers on the upper surface of each wing; and (3) the landing gear, whose deployment serves as a significant drag device when extended before touchdown.

53. Second, the devices designed to slow the aircraft once it has landed on the runway failed, including: (1) cascade type reverse thrusters that redirect the engine fan flow forward; (2) carbon wheel brakes, a critical component of the landing gear that failed to deploy; and finally, (3) after touchdown, the spoilers that serve as *ground* spoilers not only continuing to add drag, but also adding downward pressure on the wheels to aid in braking.

54. Finally, upon information and belief, following the bird strike the aircraft experienced electrical failures that disrupted power distribution and corrupted data transmitted among critical systems, likely including the engine control system, electrical power system, and associated air data and inertial reference inputs. As a result, these systems malfunctioned or operated in a degraded condition, causing the aircraft to respond inconsistently and unpredictably to pilot commands.

55. Based upon the preliminary data produced it is believed that, under these conditions, thrust from one or both engines was governed in whole or in part by internal system logic rather than direct pilot input, creating asymmetric thrust and impairing controllability. This loss of effective pilot authority interfered with their ability to reduce airspeed and deploy landing gear, which was a proximate cause of the accident and resulting damages.

Master Complaint
Case No. MDL 3174 – Pg. 12

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

56. At all relevant times, it was known within the aviation industry and recognized by federal guidance that electronic engine control systems must be designed to prevent any single failure or reasonably foreseeable malfunction from resulting in unsafe conditions, including loss of meaningful pilot control. Notwithstanding this knowledge, Defendants designed and certified the aircraft such that disturbances in electrical power or data integrity could propagate across systems, degrade engine control functionality, and override or neutralize pilot commands without adequate safeguards.

57. These defects further created a confusing and time-critical environment by producing unreliable data and aircraft responses inconsistent with pilot inputs, materially impairing the pilots' situational awareness and decision-making. Any actions or inactions by the flight crew occurred within, and were substantially influenced by, these system-induced conditions, which were a proximate cause of the accident and Plaintiffs' damages.

58. The combination of the above-mentioned failures forced the pilots to belly-land the aircraft 1200 meters down the 2600-meter runway, at a high speed of 175 mph. It would then overrun the runway to crash into a non-frangible structure where it exploded, killing all of Plaintiffs' Decedents.

# VII. CAUSES OF ACTION

## A. GENERALLY

59. Plaintiff Personal Representatives are authorized to bring all of Claimants' claims under Wrongful Death laws and Decedent's Survival Actions as provided for in RCW 4.20.010, .020 (wrongful death & beneficiaries), .046 (general survival), .060 (special survival), and RCW 4.24.010 (parent/guardian claim for injury/death of a child or, as amended, certain adult-child claims).

60. Decedents were fault-free passengers.

Master Complaint
Case No. MDL 3174 – Pg. 13

HERRMANN LAW GROUP
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

61. Boeing's aircraft, the 737-800 involved in the air crash, is a *"product"* under Washington law. RCW 7.72.010(3).

62. Boeing cannot avail itself of the presumption granted in RCW 7.72.060(1) regarding expiration of the product's useful safe life. This 737-800 NG aircraft was merely 15 years old and had completed only about half of the flight cycles Boeing publicly advertised.

63. Plaintiff incorporates and re-alleges each allegation set forth above as though fully set forth in each cause of action stated below.

### B. FIRST CAUSE OF ACTION: NEGLIGENCE

64. Boeing was the designer, manufacturer, distributor, and/or seller of the Boeing 737-800 aircraft. Boeing was in the business of designing, testing, manufacturing, selling, assembling, building, distributing, marketing, and/or inspecting aircraft as suitable and safe for passenger air transportation, including this Boeing 737-800.

65. Boeing operated, supervised, managed, and/or oversaw the training of Jeju Air's pilots to fly the Boeing 737-800, and knew or should have known of the importance of correct and thorough warnings and training of pilots on how to react to bird strikes when so many of the aircraft's antiquated safe landing systems fail as they did in this air crash.

66. At all times set forth above, Boeing breached its duty of care to Plaintiffs' Decedents who were passengers aboard Jeju Flight 2216 regarding the design, manufacture, inspection, testing, assembly, distribution, and/or sale of a safe, airworthy aircraft including failure to train, instruct, and/or issue advisory warnings for proper control, management, and/or maintenance necessary to assure safe operation of the airplane. Boeing's acts and/or omissions include, but are not limited to the following:

a)      Failure to manufacture and provide a safe and effective Engine Indicating and Crew Alerting System (EICAS) on its aircraft, including this

Master Complaint
Case No. MDL 3174 – Pg. 14

HERRMANN LAW GROUP
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

aircraft, which would have assisted the pilots in determining whether to shut down an inoperable engine.

b)    Failure to provide adequate warning regarding the use of the EICAS on its aircraft, including the aircraft.

c)    Failure to manufacture and provide a safe and adequate auxiliary power unit (APU) on its aircraft, including the aircraft, which would have assisted the pilots in supplying power to the cockpit during the aircraft's descent and touchdown at the airport.

d)    Failure to manufacture and provide safe and adequate electrical and/or hydraulic systems that would continue to supply the pilots with the ability to engage the aircraft's landing gear, flaps, spoilers, ailerons, and airbrakes after encountering a bird strike during final descent to the airport.

e)    Failure to manufacture and provide a safe and adequate electrical and/or hydraulic safety system that would continue to supply the pilots with adequate power to engage the landing gear, flaps, spoilers, and ailerons, after a single engine failure.

f)    Failure to provide adequate warnings regarding the use of the flight control systems on its aircraft, including this aircraft.

g)    Failure to manufacture and provide safe and effective flight director systems, flight control computers, and/or primary flight displays on its aircraft, including this aircraft.

h)    Failure to manufacture and provide a safe and effective manual landing gear system on its aircraft, including the aircraft, which could be rapidly deployed upon final descent and at a low altitude; and

i)    Failure to properly train pilots to safely operate, monitor, and respond to the flight systems aboard its aircraft.

67. Defendants are liable to Plaintiffs because the harm to Plaintiffs was caused by their negligence because they had a duty to exercise reasonable care in their

Master Complaint
Case No. MDL 3174 – Pg. 15

HERRMANN LAW GROUP
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

design, manufacture, distribution, retailing, and sale of this aircraft, and they breached that duty as described more fully herein.

68. Defendants acted negligently and contrary to *Restatement (Second) of Torts* §§ 321, 388, 302A, and 302B.

69. Defendants had a duty to exercise reasonable care to prevent an unreasonable risk of physical harm to Plaintiffs. Defendants knew or should have known or realized that this aircraft posed an unreasonable risk of harm to Plaintiffs. Despite this actual or constructive knowledge, Defendants supplied this aircraft, which created an unreasonable risk of harm to Plaintiffs, breaching their duties and proximately causing injuries and damages for which Defendants are liable.

70. Defendants had a duty to inform Plaintiffs of dangers they knew or should have known were associated with the intended uses of this aircraft, and which dangers Defendants had no reason to believe that Plaintiffs were aware of. Despite knowing or having reason to know that this aircraft was, or was likely, to be dangerous for the intended uses of the aircraft, and despite having no reason to believe that Plaintiffs would realize the dangerous conditions of the aircraft, Defendants failed to exercise reasonable care to inform Plaintiffs of the dangerous conditions of the aircraft or of the facts which make the aircraft likely to be dangerous. Defendants' failure to inform Plaintiffs of such dangers proximately caused injuries and damages to Plaintiffs for which Defendants are liable.

71. Defendants knew or should have known that this aircraft involved an unreasonable risk of harm to Plaintiffs, through the intentional, reckless, and fraudulent conduct of Defendant Boeing. Despite Defendants' actual or constructive knowledge of such unreasonable risks, Defendants failed to exercise reasonable care owed to Plaintiffs, thereby proximately causing injuries and damages to Plaintiffs for which Defendants are liable.

72. Defendants are further liable to Plaintiffs because the harm was caused by their negligence because the defendants intentionally or negligently misrepresented

HERRMANN LAW GROUP
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

that this aircraft was safe for the use described when the defendants knew or should have known otherwise.

73. Defendants also had a duty to exercise reasonable care in warning users of this aircraft of defects of which they knew or should have known, and upon information and belief, they breached that duty because defendants learned, or should have learned, about the danger of the aircraft, but they failed to exercise reasonable care in warning product users, including Plaintiffs' Decedents, about that danger.

74. Defendant The Boeing Company knowingly and recklessly continued to deliver 737 Next Generation aircraft, including HL8088, without incorporating safety-critical system upgrades that were already designed and certified within Boeing's own production at the time this aircraft was produced. Despite the clear availability of these advanced technologies — which were specifically engineered to assist pilots in the safe operation and landing of commercial aircraft — Boeing chose to rely upon legacy 1960s-era design architecture to protect its enormous backlog of 737 orders and preserve short-term profitability.

75. As a direct result of Boeing's decision, HL8088 was delivered with outdated and vulnerable systems, leaving the pilots unable to effectively employ or rely upon critical equipment during the accident sequence, including but not limited to: 1) the engines; 2) integrated drive generators (IDGs); 3) thrust reversers; 4) flaps; 5) slats; 6) spoilers; 7) ailerons; 8) landing gear; 9) wheel brakes; 10) Auxiliary Power Unit (APU); 11) A/B electrical bus back up cross-ties; 12) battery backup; 13) flight data recorder (FDR); 15) cockpit voice recorder (CVR); and, 16) Automatic Dependent Surveillance–Broadcast transponder (ADS-B).

76. When massive cascading electrical and equipment failures occurred, the flight crew was left with insufficient redundancy, degraded situational awareness, and inadequate means of safely recovering the aircraft. This foreseeable and

Master Complaint
Case No. MDL 3174 – Pg. 17

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

preventable vulnerability constitutes gross negligence, as Boeing prioritized production volume and commercial expediency over the safety of the flying public.

77. As a direct and proximate result of Boeing above-described acts, Plaintiffs have suffered damages as set forth below.

**C. SECOND CAUSE OF ACTION: BREACH OF WARRANTY**

78. Boeing was the designer, manufacturer, distributor, and/or seller of this 737-800.

79. Before the crash of Jeju 2216, Boeing expressly and/or impliedly warranted and represented that this 737-800 aircraft, including its components and instruments, and with the instructions and warnings given by Boeing, was airworthy, of merchantable quality, both fit and safe for commercial air travel for which it was designed, intended and used. Additionally, Boeing further warranted that the aircraft and/or its components were free from all defects.

80. Boeing breached warranties because this aircraft was not airworthy, of merchantable quality, or fit and safe for the purposes for which it was designed, intended, and used, and free from all defects as stated above.

81. Plaintiffs' Decedents, who were passengers aboard Jeju Flight 2216, were intended third-party beneficiaries of Boeing's warranties that Jeju Flight 2216 was airworthy, or merchantable quality, both fit and safe for the purposes for which it was designed, intended, and used, and free from all defects.

82. As a direct and proximate result of Boeing above-described acts, Plaintiffs have suffered damages as set forth below.

**D. THIRD CAUSE OF ACTION: STRICT LIABILITY**

83. Boeing and/or Defendants Jane Roes 1-100 designed, produced, made, fabricated, constructed, and/or remanufactured and manufactured, distributed, and/or sold a defective product, this aircraft.

Master Complaint
Case No. MDL 3174 – Pg. 18

HERRMANN LAW GROUP
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

84. This aircraft was not reasonably safe as designed or manufactured or was not reasonably safe because adequate warnings or instructions were not provided including, but not limited to, those issues identified in this Complaint.

85. This aircraft was not reasonably safe. A manufacturer of a product is liable if its product was not reasonably safe in construction that proximately caused Plaintiff's damages. 6 Wash. Prac., Wash. Pattern Jury Instr. Civ. 110.01 (6th ed.). A product is not reasonably safe in construction when it is "*unsafe to an extent beyond that which would be contemplated by the ordinary consumer.*" *Id.*, citing RCW 7.72.030(3). Boeing's decisions in their construction of the 737-800 were not reasonably safe in responding to a bird strike.

86. This aircraft was not reasonably safe as designed. A manufacturer of a product is liable if its product was not reasonably safe as designed when it left the manufacturer's control, and this was a proximate cause of plaintiff's damages. A product may not be reasonably safe as designed under either a balancing test or a consumer expectations test. 6 Wash. Prac., Wash. Pattern Jury Instr. Civ. 110.02 (6th ed.)

87. Boeing's decisions in their design of the 737-800 were not reasonably safe in responding to a bird strike. This aircraft was defectively designed and unreasonably dangerous because, at the time of manufacture, the likelihood that this aircraft would cause Plaintiffs' harm or similar harms, and the seriousness of those harms, outweighed the burden on defendants to design a 737-800 that would have prevented those harms and any adverse effect a practical, feasible alternative would have on this aircraft's usefulness.

88. Given its defects, this aircraft was not reasonably safe because it was unsafe to an extent beyond that which would be contemplated by the ordinary consumer. An ordinary consumer would not contemplate that this aircraft would cause premature death.

Master Complaint
Case No. MDL 3174 – Pg. 19

HERRMANN LAW GROUP
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

89. Boeing is liable for failure to provide warnings when manufactured. A manufacturer has a duty to supply products that are reasonably safe. A product may not be reasonably safe because adequate warnings or instructions were not provided with the product. This can be proven either through a balancing test or a consumer expectations test. 6 Wash. Prac., Wash. Pattern Jury Instr. Civ. 110.03 (6th ed.)

90. Boeing is liable for failure to provide warnings after manufacture. A manufacturer has a duty to supply products that are reasonably safe. A product may not be reasonably safe because adequate warnings or instructions were not provided after the product was manufactured. 6 Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 110.03.01 (6th ed.).

## VIII. RESPONDEAT SUPERIOR

89. All acts and omissions by employees and agents of Boeing as described contributed to this accident and were performed within the scope of and in furtherance of their employment and/or agency. Under the doctrine of *Respondeat Superior*, Boeing is liable for any acts or omissions of its employees and/or agents.

## IX. CHOICE OF LAWS

90. Notice is hereby given that pursuant *Erickson v. Pharmacia LLC*, 205 Wn.2d 49, 578 P.3d 49 (2025), Plaintiffs may request that the Court apply Illinois and/or Virginia law as well as, under FRCP 44.1, the laws of the Republic of Korea.

## X. RESERVATION OF RIGHTS

91. Plaintiffs reserve the right to amend this complaint by modifying the above-mentioned allegations or to assert additional claims as may be appropriate following further investigation and discovery. Plaintiffs also reserve the right to pursue this case in an alternative, appropriate forum.

## XI. JURY DEMAND

Master Complaint
Case No. MDL 3174 – Pg. 20

HERRMANN LAW GROUP
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

92. Plaintiffs demand that this action be tried before a jury.

## XII. PRAYER FOR RELIEF

93. **WHEREFORE,** plaintiffs pray for judgment against the defendants awarding plaintiffs the following according to proof.

### A. SURVIVAL ACTIONS

94. Noneconomic damages suffered by each Decedent such as fear, terror, and anxiety, experienced during the last four (4) minutes of the flight as well as the physical pain they suffered perishing in the flames.

95. Economic damages suffered by each Decedent's estate such as loss of net accumulations and funeral expenses reasonably and necessarily incurred.

### B. WRONGFUL DEATH ACTIONS

96. Noneconomic damages suffered by marital and domestic partner couples such as loss of consortium which includes the loss of the right to the company, cooperation, and aid of the Decedent. It includes the loss of emotional support, love, affection, care, services, companionship, including sexual companionship, as well as assistance from one to the other.

97. Noneconomic damages also include the loss of love, care, companionship, and guidance that the Decedent would have contributed to their children, their parents, and/or siblings to the present time.

98. Economic damages which include any benefit of value, including money, goods, and services that each of the Decedents would have provided for the benefit of their spouse/partner, children, parents, and/or siblings that they would have received up to the present time.

99. Economic damages also include any benefit of value, including money, goods, and services that each of the Decedents would have provided for the benefit of their spouse/partner, children, parents, and/or siblings that they would receive in the future.

Master Complaint
Case No. MDL 3174 – Pg. 21

HERRMANN LAW GROUP
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

100. Reasonable attorneys' fees and costs.

101. Prejudgment interest on items of economic damages.

102. Postjudgment interest on all damages awarded.

103. Such other relief as the Court deems just and equitable in the premises.

Dated this 21st day of May 2026.

**HERRMANN LAW GROUP**

  /s/ Charles Herrmann
Charles J. Herrmann (WSBA #6173)
Lara A. Herrmann (WSBA #30564)
Anthony Marsh (WSBA # 45194)
Sara Luer (WSBA #61543)
Brittany Gautier (WSBA #64182)

**PFAU COCHRAN VERTETIS AMALA PLLC**

  /s/ Thomas B. Vertetis
Thomas B. Vertetis (WSBA #29805)
Christopher E. Love (WSBA #42832)
William T. McClure (WSBA #54622)

Master Complaint
Case No. MDL 3174 – Pg. 22

# EXHIBIT 2

The Honorable James L. Robart

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| IN RE: AIR CRASH AT MUAN INTERNATIONAL AIRPORT, REPUBLIC OF KOREA ON DECEMBER 29. 2024 | MDL No. 2:26-md-03174-JLR<br><br>**NOTICE OF ADOPTION OF MASTER COMPLAINT**<br>**[Proposed]**<br>*(Relates to actions listed herein)* |
| **XXXX** as Personal Representative (Administrator) of the Estate of **Decedent XXX** and individually; and as next of friend of his minor child **X.X.X.** | |

## I.     PARTY PLAINTIFFS

*1.*     Plaintiff (name) is the (relationship of Decedent Name and Personal Representative (or Administrator) of Decedent's Estate. (name) is the minor child of Decedent and Plaintiff (name). *(Modify as appropriate.)*

## II.     NOTICE OF ADOPTION OF MASTER COMPLAINT

2.     The above captioned and listed Plaintiff parties, by and through their attorneys, XXX, hereby provide Notice of Adoption of the Master Complaint as follows.

Notice of Adoption of
Master Complaint
Case No. MDL 3174 – Pg. 1

*(LAW FIRM)*
(address)
(phone numbers)

3.    Plaintiffs refer to and incorporate herein the Master Complaint together with any and all later amendments thereto as permitted by the Court as though fully set forth herein. Plaintiffs adopt the Master Complaint and agree to be bound by any rulings concerning the pleadings in the Master Complaint.

4.    Plaintiffs specifically adopt all of the allegations contained in the Master Complaint as though fully set forth herein, except those contained paragraph(s) XX as set forth and explained as follows: _____.

5.    Plaintiffs specifically adopt each of the Causes of Action as set forth in the Master Complaint except as follows: _____.

6.    In addition to the Causes of Action alleged in the Master Complaint, these Plaintiffs allege the following Causes of Action: _____.

7.    Plaintiffs specifically adopt the requests for relief contained in the Master Complaint except as follows: _____.

8.    In addition to the requests for relief contained in the Master Complaint, these Plaintiffs allege damages as follows: _____.

9.    Plaintiffs take exception to and/or modify any allegation or language contained in the Master Complaint and/or additionally allege as follows: _____.

10.    Plaintiffs reiterate herein the Demands for trial by Jury on all their claims.

Dated this ____ day of _____ 2026

Respectfully submitted,

_____
(Signature block)

Notice of Adoption of
Master Complaint
Case No. MDL 3174 – Pg. 2

*(Law Firm)*
(address)
(phone numbers)

# EXHIBIT 3

The Honorable James L. Robart

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| **IN RE: AIR CRASH AT MUAN INTERNATIONAL AIRPORT, REPUBLIC OF KOREA ON DECEMBER 29, 2024** | MDL No. 2:26-md-03174-JLR<br><br>**NOTICE OF ADOPTION OF MASTER COMPLAINT [Proposed]**<br>(*Relates to actions listed herein*) |

**Park, Soo-yong** as Personal Representative of the Estate of **Decedent Ko, Tae-yeun** and individually; and as next of friend of his minor child **P.S.E.**

**Kim**, **Dae-kyu** as Personal Representative of the Estate of **Decedent Jung**, **Hee-jin** and individually; and as next friend of his minor child **K.Y.K.; Jung, Sun-sik** individually; and **Oh, Young-min** individually.

**Yoo**, **Jeong-im** as Personal Representative of the Estate of **Decedent Yeo**, **Chae-young** and individually; and **Yeo**, **Hyeung-ku** individually.

**Kim**, **Noh-young** as Personal Representative of the Estate of **Decedent Kim**, **Se-hyun**; **Yoo**, **Jeong-im** individually; **Yeo**, **Hyeung-ku** individually; **Kim**, **Joung-nam** individually; and **Choi**, **Hyoun-sook** individually.

Notice of Adoption of
Master Complaint
Case No. MDL 3174 – Pg. 1

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

**Yoo**, **Jeong-im** as Personal Representative of the Estate of **Decedent Kim**, **Da-som** and individually. **Yeo**, **Hyeung-ku** individually. **Kim**, **Jeong-nam** individually. **Choi**, **Hyoun-sook** individually.

**Kim**, **Noh-young** as Personal Representative of the Estate of **Decedent Kim**, **Seul-kee**; **Kim**, **Jeong-nam** individually; and **Choi**, **Hyoun-sook** individually.

**Lee**, **Mi-jeong** as Personal Representative of the Estate of **Decedent Lee**, **Jae-hyeok** and individually; and Lee, **Jeong-geun** individually.

**Lee**, **Jeong-bok** as Personal Representative of the Estate of **Decedent Lee**, **Min-ju** and individually; and Jeong, **Hyeon-kyeong** individually.

**Baek**, **Seong-cheoul** as Personal Representative of the Estate of **Decedent Kim**, **Jung-hee** and individually.

**Kim**, **Dae-hyun** as Personal Representative of the Estate of **Decedent Kim**, **Hyun-hee** and individually.

**Choi**, **Wan-tae** as Personal Representative of the Estate of **Decedent Choi**, **Seo-hee** and individually; and Hwang, **Keum-ran** individually.

**Son**, **Ju-taeg** as Personal Representative of the Estate of **Decedent Son**, **Chang-kook** and individually; and Lee, **Kyoung-im** individually.

Notice of Adoption of
Master Complaint
Case No. MDL 3174 – Pg. 2

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

**Kwon, Min-young** as Personal Representative of the Estate of **Decedent Kwon, Ju-ha** and individually; **Kwon, Jae-young** individually; and **Kwon, Seok-jun** individually.

**Kwon, Min-young** as Personal Representative of the Estate of **Decedent Kim, Suk-yi** and individually; **Kwon, Jae-young** individually; **Kim, Gab-ju** individually **Huh; Deok-soon** individually.

**Cho, Jae-yeon** as Personal Representative of the Estate of **Decedent Lee, Sun-hwa** and individually; **Cho, Yeon-woo** individually.

**Oh, Jae-jin** as Personal Representative of the Estate of **Decedent Oh, Myoung-kyun**, and individually; **Park, Gui-sook**, individually; **Oh, Jin-sung**, individually.

**Park, Geun-woo** as Personal Representative of the Estate of **Decedent Park, Seung-ho**, and individually; **Cho, Wol-ja**, individually; **Oh, Jin-sung**, individually.

**Park, Geun-woo** as Personal Representative of the Estate of **Decedent Oh, In-kyung**, and individually; **Cho, Wol-ja**, individually; **Oh, Jin-sung**, individually.

**Koh, Sung-lim** as Personal Representative of the Estate of **Decedent An, Yun-sug**, and individually; **An, Jeong-hee**, individually.

**Yu, Soon-heul** as Personal Representative of the Estate of **Decedent Ko, Kang-in** and individually.

Notice of Adoption of
Master Complaint
Case No. MDL 3174 – Pg. 3

**Yu, Soon-heul** as Personal Representative of the Estate of **Decedent Ko, Yoon-woo**, and individually.

**Ryu, Kum-ji** as Personal Representative of the Estate of **Decedent Yoo, Nam-young**, and individually; **Ryu, Eun-ji** individually; **Ryu, Mi-ji** individually; **Kim, Seong-sun** individually.

**Ryu, Kum-ji** as Personal Representative of the Estate of **Decedent Kim, Young-jin**, and individually. **Ryu, Eun-ji** individually; **Ryu, Mi-ji** individually.

**Kim, Shin-kwang** as Personal Representative of the Estate of **Decedent Kim, Yang-tae** and individually; **Kim, Shin-ae** individually; **Kim, Shin-young** individually; **Kim, Shin-hee** individually.

**Kim, Shin-kwang** as Personal Representative of the Estate of **Decedent Choi, Ok-ja**, and individually; **Kim, Shin-ae** individually; **Kim, Shin-young** individually; **Kim, Shin-hee** individually.

**Jung, Byung-il** as Personal Representative of the Estate of **Decedent Park, Seo-woon**, and individually; **Jeong, Hye-yeong** individually; **Jung, Byoung-ok** individually.

**Jung, Byung-il** as Personal Representative of the Estate of **Decedent Jung, Sang-chil** and individually; **Jeong, Hye-yeong** individually; **Jung, Byoung-ok** individually.

Notice of Adoption of
Master Complaint
Case No. MDL 3174 – Pg. 4

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

**Han, Sang-yeon** as Personal Representative of the Estate of **Decedent Han, Chan-seob** and individually; **Han, Sang-min** individually; **Han, Sang-hoon** individually.

**Han, Sang-yeon** as Personal Representative of the Estate of **Decedent Kang, Sung-in** and individually; **Han, Sang-min** individually; **Han, Sang-hoon** individually.

**Yun, Yeong-hwan** as Personal Representative of the Estate of **Decedent Kim, Suk-ja** and individually; **Yun, Young-min** individually.

**Yun, Yeong-hwan** as Personal Representative of the Estate of **Decedent Youn, Bong-ho** and individually; **Yun, Young-min** individually; **Jin, Gam-nye** individually.

**Park, Hye-seon** as Personal Representative of the Estate of **Decedent Shin, Chung-ja** and individually; **Park, Jin-young** individually.

**Park, Hye-seon** as Personal Representative of the Estate of **Decedent Park, Ran-soo** and individually; **Park, Jin-young** individually.

**Kim, Hyoun-tae** as Personal Representative of the Estate of **Decedent Cho, Jung-soo** and individually; **Kim, Yujin** individually; **Kim, Su-jin** individually.

Notice of Adoption of
Master Complaint
Case No. MDL 3174 – Pg. 5

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

**Seol, Ki-chang** as Personal Representative of the Estate of **Decedent Kim, Mi-ja** and individually; **Seol, Jae-wook** individually; **Seol, Sae-mi** individually; **Kim, Young-gi** individually; **Lee, Jeom-deok** individually.

**Yu, Hyeon-su** as Personal Representative of the Estate of **Decedent Jeong, Eun-hye** and individually; **Yu, Hyeon-ji** individually; **Ryu, Pyeong** individually.

**Choi, Dong-oh** as Personal Representative of the Estate of **Decedent Ki, Hyun-ja** and individually; **Choi, Yun-seo** individually; **Choi, In-seo** individually; **Choi, Jae-hu** individually.

**Shin, Yu-cheol** as Personal Representative of the Estate of **Decedent Na, Hye**-sun, individually, and as next friend of their minor child S.S.Y.; **Shin, Dong-yun** individually; **Na, In-soo** individually; **Jeon, Gong-soon** individually.

**Kim, In-yong** as Personal Representative of the Estate of **Decedent Kim, Min-young**, individually, and as next friend of their minor daughters **K.H.Y.** and **K.E.H.**; **Kim, Hee-eun** individually; **Lee, Bong-soon** individually.

**Kim, Sha-lee** as Personal Representative of the Estate of **Decedent Kim, Mu-oh** and individually.

**Jeong, Myeong-suk** as Personal Representative of the Estate of **Decedent Choi, Gil-in** and individually; **Choe, Hyo-eun** individually; **Choe, Cho-eun** individually.

Notice of Adoption of
Master Complaint
Case No. MDL 3174 – Pg. 6

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

**Ko, Soon-ok** as Personal Representative of the Estate of **Decedent Seo, Byung-hwan** and individually; **Seo, Kyung-ho** individually; **Seo, Young-jin** individually.

**Jeon, In-hyang** as Personal Representative of the Estate of **Decedent Tae, A-ri** and individually; **Tae, Nam-suk** individually.

**Seo, Kyung-ho** as Personal Representative of the Estate of **Decedent Seo, Young-sin** and individually; **Ko, Soon-ok** individually; **Seo, Young-jin** individually.

**Kang, Young-hyun** as Personal Representative of the Estate of **Decedent Lee, Haeng-ja** and individually; **Kang, Song-yong** individually; **Lee, Hye-ja** individually; **Lee, Mae-ja** individually; **Lee, Gwang-cheol** individually; **Lee, Gwang-nam** individually; **Lee, Gwang-lee** individually.

**Kim, Hye-jin** as Personal Representative of the Estate of **Decedent Kang, Young-oh** and individually, and as next friend of their minor daughter **K.H.J.**; **Kang, Song-yong** individually; **Kang, Young-hyun** individually.

**Kim, Hye-jin** as Personal Representative of the Estate of **Decedent Kang, Seo-yeon**, individually, and as next friend of her minor daughter **K.H.J.**

**Plaintiffs,**

vs.

**The Boeing Company, Inc.**, a Delaware corporation; and **Jane Roes 1-100**, inclusive.

**Defendants.**

Notice of Adoption of
Master Complaint
Case No. MDL 3174 – Pg. 7

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

## I.    PLAINTIFFS

1.    Plaintiff Park, Soo-yong is the husband of Decedent Ko, Tae-yeun and Personal Representative of Decedent's Estate. P.S.E. is the minor child of Decedent and Plaintiff Park, Soo-yong.

2.    Plaintiff Kim, Dae-kyu is the husband of Decedent Jung, Hee-jin and Personal Representative of Decedent's Estate. K.Y.K. is the minor child of Decedent Jung, Hee-jin and Plaintiff Kim, Dae-kyu. Jung, Sun-sik is Decedent's father, and Oh, Young-min is Decedent's mother.

3.    Plaintiff Yoo, Jeong-im is the mother of Decedent Yeo, Chae-young and Personal Representative of Decedent's Estate. Yeo, Hyeung-ku is Decedent's father.

4.    Plaintiff Kim, Noh-young is the paternal aunt of Decedent Kim, Se-hyun and Personal Representative of Decedent's Estate. Decedent's parents (Yeo, Chae-young & Kim, Seul-kee) also perished in this air crash. Yoo, Jeong-im is Decedent's maternal grandmother, Yeo, Hyeung-ku is Decedent's maternal grandfather, Kim, Joung-nam is Decedent's paternal grandfather, and Choi, Hyoun-sook is Decedent's paternal grandmother.

5.    Plaintiff Yoo, Jeong-im is the maternal grandmother of Decedent Kim, Da-som and Personal Representative of Decedent's Estate. Decedent's parents Yeo, Chae-young & Kim, Seul-kee also perished in this air crash. Yeo, Hyeung-ku is Decedent's maternal grandfather. Kim, Joung-nam is Decedent's paternal grandfather. Choi, Hyoun-sook is Decedent's paternal grandmother.

6.    Plaintiff Kim, Noh-young is the sister of Decedent Kim, Seul-kee and Personal Representative of Decedent's Estate. Kim, Joung-nam is Decedent's father. Choi, Hyoun-sook is Decedent's mother.

Notice of Adoption of
Master Complaint
Case No. MDL 3174 – Pg. 8

HERRMANN LAW GROUP
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

7.    Plaintiff Lee, Mi-jeong is the mother of Decedent Lee, Jae-hyeok and Personal Representative of Decedent's Estate. Lee, Jeong-geun is Decedent's father.

8.    Plaintiff Lee, Jeong-bok is the father of Decedent Lee, Min-ju and Personal Representative of Decedent's Estate. Jeong, Hyeon-kyeong is Decedent's mother.

9.    Plaintiff Baek, Seong-cheoul is the domestic partner of Decedent Kim, Jung-hee and Personal Representative of Decedent's Estate.

10.    Plaintiff Kim, Dae-hyun is the domestic partner of Decedent Kim, Hyun-hee and Personal Representative of Decedent's Estate.

11.    Plaintiff Choi, Wan-tae is the father of Decedent Choi, Seo-ee and Personal Representative of Decedent's Estate. Hwang, Keum-ran is Decedent's mother.

12.    Plaintiff Son, Ju-taeg is the father of Decedent Son, Chang-kook and Personal Representative of Decedent's Estate. Lee, Kyoung-im is Decedent's mother.

13.    Plaintiff Kwon, Min-young is the daughter of Decedent Kwon, Ju-ha and Personal Representative of Decedent's Estate. Kwon, Jae-young is Decedent's daughter. Kwon, Seok-jun is Decedent's father.

14.    Plaintiff Kwon, Min-young is the daughter of Decedent Kim, Suk-yi and Personal Representative of Decedent's Estate. Kwon, Jae-young is the daughter of Decedent. Kim, Gab-ju is the father of Decedent. Huh, Deok-soon is the mother of Decedent.

15.    Plaintiff Cho, Jae-yeon is the husband of Decedent Lee, Sun-hwa and Personal Representative of Decedent's Estate. Cho, Yeon-woo is the daughter of Decedent Lee, Sun-hwa and Plaintiff Cho, Jae-yeon.

HERRMANN LAW GROUP
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

16.   Plaintiff Oh, Jae-jin is the son of Decedent Oh, Myoung-kyun and Personal Representative of Decedent's Estate. Park, Gui-sook is Decedent's wife. Oh, Jin-sung is the son of Decedent and Park, Gui-sook.

17.   Plaintiff Park, Geun-woo is the son of Decedent Park, Seung-ho and Personal Representative of Decedent's Estate. Cho, Wol-ja is Decedent's mother-in-law. Oh, Jin-sung is Decedent's father-in-law.

18.   Plaintiff Park, Geun-woo is the son of Decedent Oh, In-kyung and Personal Representative of Decedent's Estate. Cho, Wol-ja is Decedent's mother. Oh, Jin-sung is Decedent's father.

19.   Plaintiff Koh, Sung-lim is the mother of Decedent An, Yun-sug and Personal Representative of Decedent's Estate. An, Jeong-hee is Decedent's father.

20.   Plaintiff Yu, Soon-heul is the mother of Decedent Ko, Kang-in and Personal Representative of Decedent's Estate.

21.   Plaintiff Yu, Soon-heul is the paternal grandmother of Decedent Ko, Yoon-woo and Personal Representative of Decedent's Estate.

22.   Plaintiff Ryu, Kum-ji is the daughter of Decedent Yoo, Nam-young and Personal Representative of Decedent's Estate. Ryu, Eun-ji is Decedent's daughter. Ryu, Mi-ji is Decedent's daughter. Kim, Seong-sun is Decedent's mother.

23.   Plaintiff Ryu, Kum-ji is the daughter of Decedent Kim, Young-jin and Personal Representative of Decedent's Estate. Ryu, Eun-ji is Decedent's daughter. Ryu, Mi-ji is Decedent's daughter.

24.   Plaintiff Kim, Shin-kwang is the son of Decedent Kim, Yang-tae and Personal Representative of Decedent's Estate. Kim, Shin-ae is

HERRMANN LAW GROUP
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

Decedent's daughter. Kim, Shin-young is Decedent's daughter. Kim, Shin-hee is Decedent's daughter.

25.  Plaintiff Kim, Shin-kwang is the son of Decedent Choi, Ok-ja and Personal Representative of Decedent's Estate. Kim, Shin-ae is Decedent's daughter. Kim, Shin-young is Decedent's daughter. Kim, Shin-hee is Decedent's daughter.

26.  Plaintiff Jung, Byung-il is the son of Decedent Park, Seo-woon and Personal Representative of Decedent's Estate. Jeong, Hye-yeong is Decedent's daughter. Jung, Byoung-ok is Decedent's son.

27.  Plaintiff Jung, Byung-il is the son of Decedent Jung, Sang-chil and Personal Representative of Decedent's Estate. Jeong, Hye-yeong is Decedent's daughter. Jung, Byoung-ok is Decedent's son.

28.  Plaintiff Han, Sang-yeon is the son of Decedent Han, Chan-seob and Personal Representative of Decedent's Estate. Han, Sang-min is Decedent's son. Han, Sang-hoon is Decedent's son.

29.  Plaintiff Han, Sang-yeon is the son of Decedent Kang, Sung-in and Personal Representative of Decedent's Estate. Han, Sang-min is Decedent's son. Han, Sang-hoon is Decedent's son.

30.  Plaintiff Yun, Yeong-hwan is the son of Decedent Kim, Suk-ja and Personal Representative of Decedent's Estate. Yun, Young-min is Decedent's son.

31.  Plaintiff Yun, Yeong-hwan is the son of Decedent Youn, Bong-ho and Personal Representative of Decedent's Estate. Yun, Young-min is Decedent's son. Jin, Gam-nye is Decedent's mother.

32.  Plaintiff Park, Hye-seon is the daughter of Decedent Shin, Chung-ja and Personal Representative of Decedent's Estate. Park, Jin-young is Decedent's daughter.

HERRMANN LAW GROUP
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

33. Plaintiff Park, Hye-seon is the daughter of Decedent Park, Ran-soo and Personal Representative of Decedent's Estate. Park, Jin-young is Decedent's daughter.

34. Plaintiff Kim, Hyoun-tae is the husband of Decedent Cho, Jung-soo and Personal Representative of Decedent's Estate. Kim, Yu-jin is Decedent's daughter. Kim, Su-jin is Decedent's daughter.

35. Plaintiff Seol, Ki-chang is the husband of Decedent Kim, Mi-ja and Personal Representative of Decedent's Estate. Seol, Jae-wook is Decedent's son. Seol, Sae-mi is Decedent's daughter. Kim, Young-gi is Decedent's father. Lee, Jeom-deok is Decedent's mother.

36. Plaintiff Yu, Hyeon-su is the son of Decedent Jeong, Eun-hye and Personal Representative of Decedent's Estate. Yu, Hyeon-ji is Decedent's daughter. Ryu, Pyeong is Decedent's domestic partner.

37. Plaintiff Choi, Dong-oh is the husband of Decedent Ki, Hyun-ja and Personal Representative of Decedent's Estate. Choi, Yun-seo is Decedent's daughter. Choi, In-seo is Decedent's daughter. Choi, Jae-hu is Decedent's son.

38. Plaintiff Shin, Yu-cheol is the husband of Decedent Na, Hye-sun and Personal Representative of Decedent's Estate. Shin, Dong-yun is Decedent's son. S.S.Y. is Decedent's minor daughter. Na, In-soo is Decedent's father. Jeon, Gong-soon is Decedent's mother.

39. Plaintiff Kim, In-yong is the husband of Decedent Kim, Min-young and Personal Representative of Decedent's Estate. K.H.Y. is Decedent's minor daughter. Kim, Hee-eun is Decedent's daughter. K.E.H. is Decedent's minor daughter. Lee, Bong-soon is Decedent's mother.

40. Plaintiff Kim, Sha-lee is the sister of Decedent Kim, Mu-oh and Personal Representative of Decedent's Estate.

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

41.    Plaintiff Jeong, Myeong-suk is the wife of Decedent Choi, Gil-in and Personal Representative of Decedent's Estate. Choe, Hyo-eun is Decedent's daughter. Choe, Cho-eun is Decedent's daughter.

42.    Plaintiff Ko, Soon-ok is the wife of Decedent Seo, Byung-hwan and Personal Representative of Decedent's Estate. Seo, Kyung-ho is Decedent's son. Seo, Young-jin is Decedent's daughter.

43.    Plaintiff Jeon, In-hyang is the mother of Decedent Tae, A-ri and Personal Representative of Decedent's Estate. Tae, Nam-suk is Decedent's father.

44.    Plaintiff Seo, Kyung-ho is the brother of Decedent Seo, Young-sin and Personal Representative of Decedent's Estate. Ko, Soon-ok is Decedent's mother. Seo, Young-jin is Decedent's sister.

45.    Plaintiff Kang, Young-hyun is the son of Decedent Lee, Haeng-ja and Personal Representative of Decedent's Estate. Kang, Song-yong is Decedent's husband. Lee, Hye-ja is the sister of Decedent. Lee, Mae-ja is the sister of Decedent. Lee, Gwang-cheol is the brother of Decedent. Lee, Gwang-nam is the brother of Decedent. Lee, Gwang-lee is the brother of Decedent.

46.    Plaintiff Kim, Hye-jin is the wife of Decedent Kang, Young-oh and Personal Representative of Decedent's Estate. K.H.J. is the minor daughter of Decedent Kang, Young-oh and Plaintiff Kim, Hye-jin. Kang, Song-yong is Decedent's father. Kang, Young-hyun is Decedent's brother.

47.    Plaintiff Kim, Hye-jin is the mother of Decedent Kang, Seo-yeon and Personal Representative of Decedent's Estate. K.H.J. is the minor sister of Decedent.

HERRMANN LAW GROUP
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

## II.   NOTICE OF ADOPTION OF MASTER COMPLAINT

48.   The above-captioned and listed Plaintiff parties, by and through their attorneys, *HERRMANN LAW GROUP* (HLG) and *Pfau Cochran Vertetis Amala (PCVA)*, hereby provide Notice of Adoption of the Master Complaint as follows.

49.   Plaintiffs refer to and incorporate herein the Master Complaint together with any and all later amendments thereto as permitted by the Court as though fully set forth herein. Plaintiffs adopt the Master Complaint and agree to be bound by any rulings concerning the pleadings in the Master Complaint.

50.   Plaintiffs specifically adopt all of the allegations contained in the Master Complaint as though fully set forth herein.

51.   Plaintiffs specifically adopt each of the Causes of Action as set forth in the Master Complaint.

52.   Plaintiffs specifically adopt the requests for relief contained in the Master Complaint.

53.   Plaintiffs reiterate herein the demands for trial by jury on all their claims.

Dated this 21st day of May 2026.

*HERRMANN LAW GROUP*                    *PFAU COCHRAN VERTETIS AMALA PLLC*

__/s/ Charles Herrmann_____          __/s/ Thomas B. Vertetis_____
Charles J. Herrmann (WSBA #6173)        Thomas B. Vertetis (WSBA #29805)
Lara A. Herrmann (WSBA #30564)          Christopher E. Love (WSBA #42832)
Anthony Marsh (WSBA # 45194)            William T. McClure (WSBA #54622)
Sara Luer (WSBA #61543)
Brittany Gautier (WSBA #64182)

Notice of Adoption of
Master Complaint
Case No. MDL 3174 – Pg. 14

*HERRMANN LAW GROUP*
505 5th Ave So., Ste. 330
Seattle, WA 98104
V: 206.625.9104
F: 206.682.6710

# EXHIBIT 4

The Honorable James L. Robart

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| **IN RE: AIR CRASH AT MUAN INTERNATIONAL AIRPORT, REPUBLIC OF KOREA ON DECEMBER 29. 2024** | MDL No. 2:26-md-03174-JLR |
| | **NOTICE OF ADOPTION OF MASTER COMPLAINT [Proposed]** |
| **KIM DA HYE** as Special Administrator of the Estate of **Decedent KIM JUNG JUN** | (*Relates to actions listed herein*) |

**BAE HYUN JUN,** as Special Administrator  of the Estates of **Decedents BAE YUNGI, IM SUMDEOK,** and **BAE MUNSUCK**

**LEE MYUNG JA,** as Special Administrator of the Estate of **Decedent PARK JUNG DAL**

**KEUNG SEUNG YANG,** as Special Administrator of the Estate of **Decedent LEE YUN CHAE**

**CHOI MAK RE,** as Special Administrator of the Estate of

Notice of Adoption of
Master Complaint
Case No. MDL 3174 – Pg. 1

*(Law Firm)*
(address)
(phone numbers)

**DECEDENT JANG DONG GYOON**

**KIM SUNG CHEOL,** as Personal Representative of the Estates of **DECEDENTS PARK HYUN RA** and **KIM SOO RIM**

**SEO JAE HYEOK,** as Personal Representative of the Estate of **DECEDENT SEO HAN CHUNG**

<strong>PARTY PLAINTIFFS</strong>

1.      Plaintiff Kim Da Hye is the daughter of Decedent Kim Jung Jun and Special Administrator of Decedent's Estate.

2.      Plaintiff Bae Hyun Jun is the son of Decedents Bae Yung and IM Sumdeok and the brother of Decedent Bae Munsuck and is the Special Administrator of these Decedents' Estates.

3.      Plaintiff Lee Myung Ja is the spouse of Decedent Park Jong Dal and the Special Administrator of Decedent's Estate.

4.      Keung Seung Yang is the spouse of Decedent Lee Yun Chae and the Special Administrator of Decedent's Estate.

5.      Choi Mak Re is the spouse of Decedent Jang Dong Gyoon and the Special Administrator of Decedent's Estate.

6.      Plaintiff Kim Sung Cheol is the spouse of Decedent Park Hyun Ra and the father of Decedent Kim Soo Rim and the Personal representative of these Decedents' Estates.

7.      Plaintiff Seo Jae Hyeok is the spouse of Decedent Seo Han Chun and the Personal representative of Decedent's Estate.

<strong>I.      NOTICE OF ADOPTION OF MASTER COMPLAINT</strong>

Notice of Adoption of
Master Complaint
Case No. MDL 3174 – Pg. 2

*(Law Firm)*
(address)
(phone numbers)

8.    The above captioned and listed Plaintiff parties, by and through their attorneys, Floyd A. Wisner and Daniel D. Barks, hereby provide Notice of Adoption of the Master Complaint as follows.

9.    Plaintiffs refer to and incorporate herein the Master Complaint together with any and all later amendments thereto as permitted by the Court as though fully set forth herein. Plaintiffs adopt the Master Complaint and agree to be bound by any rulings concerning the pleadings in the Master Complaint.

10.    Plaintiffs specifically adopt all of the allegations contained in the Master Complaint as though fully set forth herein.

11.    Plaintiffs specifically adopt each of the Causes of Action as set forth in the Master Complain

12.    Plaintiffs specifically adopt the requests for relief contained in the Master Complaint.

13.    Plaintiffs reiterate herein the Demands for trial by Jury on all their claims.

Dated this 18 day of May 2026

Respectfully submitted,


_____
Floyd A. Wisner
Attorney for Plaintiff
Wisner Law Firm
181 W Madison St
Suite 4700
Chicago, Illinois 60602
Telephone: (312) 262-9434
 Attorney ID No. 11151

Daniel D. Barks
Attorney for Plaintiffs
5555 Glenridge Connector
Suite 550
Atlanta, GA 33043
(404) 751-0632 (phone)
(866)936-6382 (fax)



*(LAW FIRM)*
(address)
(phone numbers)